CASE NO.: 13-35703
_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

DANE AND JENNIFER JENSEN,

Plaintiffs-Appellants,

v.

U.S. BANK, N.A., a foreign legal entity,
dba U.S. Bank Home Mortgage

Defendant-Appellee

_____

**APPELLANTS' REPLY BRIEF**
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
U.S.D.C. No. 3:12-cv-00333-ST
THE HONORABLE JANICE M. STEWART
_____

JUSTIN M. BAXTER, ESQ.
MICHAEL C. BAXTER, ESQ.
Baxter & Baxter, LLP
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031
Attorneys for Plaintiffs-Appellants

# TABLE OF CONTENTS

INTRODUCTION . . . 1

ARGUMENT . . . 2

I.  THE BANK REPORTED INACCURATE INFORMATION . . . 2

    A.  Admissions by Defendant's Employees . . . 2

    B.  Extrinsic Evidence . . . 4

    C. *Corvello v. Wells Fargo Bank, NA* . . . 5

II. PLAINTIFFS SUFFERED DAMAGES . . . 8

CONCLUSION . . . 10

i

# TABLE OF AUTHORITIES

*Corvello v. Wells Fargo Bank, NA*,
728 F.3d 878 (9th Cir.  2013) . . . 5

*Dennis v. BEH-1, LLC*, 504 F.3d 892 (9th Cir. 2007) . . . 8

*Miller v. Equifax Info. Servs., LLC*,
2012 U.S. Dist. LEXIS 168894 (D. Or. Nov. 28, 2012) . . . 8

*Taylors Coffee Shop v. Taylor*,
56 Or App 419, 422, 643 P.2d 427 (1982) . . . 4

*West v. JPMorgan Chase Bank, N.A.*,
154 Cal.  Rptr.  3d 285, 303 (Cal. App. 4th Dist. 2013) . . . 5

**INTRODUCTION**

Dane and Jennifer Jensen were current on their mortgage when they contacted U.S. Bank in 2009 to inquire about the HAMP program.  They would not have applied for the modification had they known the catastrophic results that would follow from trusting the bank employees with whom Mr. Jensen spoke.

The Jensens were induced to apply for the HAMP modification based upon the affirmative representations of three different bank employees – the phone operator that took the application, bank employee Byron, and his supervisor Ginny.  Two different bank employees – Jackie and Tim – admitted that the bank had wrongly caused delinquencies to be reported. Jackie told Mr. Jensen that making a $1792.65 payment would clear their credit.  Brandy Holloway represented in an email that payment of $1,898.03 would "also stop the late reporting."

The Jensens trusted and followed the instructions of the bank employees – the phone operator, Byron, Ginny, Jackie, Tim and Brandy Holloway.  They submitted the requested documents, they made the payments they were instructed to make.  The bank ruined the Jensens' credit. Only after this action was filed did the bank stop the false reporting, and the Jensens were allowed to refinance their mortgage with another lender.

1

**ARGUMENT**

I. THE BANK REPORTED INACCURATE INFORMATION.

A. Admissions by Defendant's Employees.

The bank maintains in its brief that it reported accurate information. But its own employees repeatedly contradict that contention. Two different bank employees explicitly acknowledged that the reporting was not correct. Bank employee Jackie told Mr. Jensen that the trial period had unfairly caused them to become delinquent, and that the bank was working on the problem. She told Mr. Jensen that the issue had caused so many problems that the bank had stopped using the trial period format. ER 165. Jackie told Mr. Jensen that making a $1792.65 payment would clear their credit. ER 165. The bank does not offer any evidence to contradict these statements.

Bank employee Tim went through the files, checked the math, and determined that their payments were misapplied during the trial period in 2009. He told Mr. Jensen that it was caused by a bank error. He promised to forward the case up to top management and told Mr. Jensen that Melissa would call him back. ER 170. The bank also does not offer any evidence to contradict this statement.

Furthermore, bank employee Brandy Holloway stated to Mr. Jensen in an email that if the Jensens sent $1898.03 "This will also stop the late

2

reporting." ER 220.  The Jensens sent a check, but the bank did not stop the late reporting.

Bank employee Kelly Alvey acknowledged that the bank "set a task to attempt to correct the credit reporting for the months of 10/5/10 and 9/7/10 as they knew no workout options were being considered through Default Resolution, however, the comment codes could not be removed." ER 172-173.

Finally, Bank employee Anna Clouse admitted that the maximum number of months the Jensens could be considered late was 15, and not the 18 months that the bank reported.  ER 250.  The bank's employees acknowledge repeatedly that the bank was reporting inaccurate information.

Moreover, the bank acknowledges in its brief that "In response to [the Jensens'] disputes, the bank made minor adjustments" to the reporting of the account.  Appellee's Answering Brief at 10.  Similarly, the bank admits "In the bank's response to the Jensens' first CRA disputes, however, the reporting was mistakenly changed to extend the late reporting back into the trial plan months.  * * * It remained on Mrs. Jensen's report for several months, but it was ultimately corrected for her as well."  Answering Br. at 35.  This creates a genuine issue of fact for the jury.

3

B.  Extrinsic Evidence.

The bank argues that the terms of the documents are unambiguous, and therefore the parole evidence rule precludes evidence of the bank's oral representations.  The fact that the Jensens and the bank proffer differing interpretations of the various contract provisions demonstrates that it is ambiguous.  Thus, extrinsic evidence is admissible to explain ambiguous terms.  *Taylors Coffee Shop v. Taylor*, 56 Or App 419, 422, 643 P.2d 427 (1982).

This is bolstered by the fact that Mr. Jensen contacted the bank to confirm the meaning of the documents, and two separate employees – Byron and Ginny – verified that the arrearages would be appended to the end of the loan whether they were approved for a permanent modification or not.  The bank explains the language as it will; however, Byron and Ginny explained what it meant to the Jensens' satisfaction, such that they proceeded with the application.

This is further bolstered by the fact the Jensens refused to pay the purported arrearages for nearly a year and a half, until April of 2011, because they maintained that the phone operator, Byron, and Ginny told them that late payments would be appended to the end of the loan, and it would not affect their credit, whether they were approved for a permanent

modification or not. If the bank employees had not made these representations, the Jensens would have simply paid the purported arrearage. Ultimately, they relented when Ms. Holloway induced them to pay $1898.03 to "stop the late reporting."

The Jensens were current on their mortgage. They would not have applied for the modification if the bank employees had disclosed that the modification put them in any jeopardy. The bank avers that this was contrary to the bank's policy, but at best, this creates a question of fact that must be resolved by the jury.

C. *Corvello v. Wells Fargo Bank, NA.*

The bank attempts to distinguish *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir. 2013), because it in fact denied the Jensens' permanent modification. In *Corvello*, the servicer did not notify the borrowers of any decision to approve or deny the permanent modification, and instead proceeded with foreclosure. This Court quoted *West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285, 303 (Cal. App. 4th Dist. 2013) with approval, noting the servicer was "required to offer some sort of good-faith permanent modification to [West] consistent with HAMP guidelines." 728 F.3d at 884. Plaintiff submit that this good faith requirement includes properly calculating the borrower's income.

5

Moreover, in the companion case, *Lucias*, the servicer argued that the borrower's claims were barred by the statute of frauds because it was an oral agreement to modify a mortgage. Id. at 885. This Court rejected that argument. This is a similar argument to the bank's parole evidence argument. In this case, three separate bank employees told the Jensens that their credit would not be adversely impacted whether they were approved for a permanent modification or not.

The bank also speculates that the Jensens should have been denied a permanent modification because Mr. Jensen received a pay raise that was similar to the amount of the bank's calculation error. Mr. Jensen did receive a pay raise in December 2009. But, there is no evidence it was the same amount as the amount of the bank's calculation error, only a comment by Mr. Jensen that it was "in the range."

Moreover, the argument is inapposite because the bank did not request nor require any further information from the Jensens. The wrongful denial was based upon a miscalculation of Mr. Jensen's gross income based on the documents provided in October of 2009. Attempting to retroactively posit what the bank might have done with information it did not have, which may or may not have been "in the range" of the bank's miscalculation, does not explain or justify what the bank *actually* did in December of 2009. The fact

of the matter is that the bank miscalculated Mr. Jensen's income, and wrongfully denied the Jensens for a permanent modification.

Finally, the bank argues that *Corvello* is distinguishable because plaintiff did not sue for breach of contract. Plaintiffs are not attempting to enforce the permanent modification. Rather, plaintiffs brought this case because they followed the specific inducements made by the operator that took the application over the phone, by bank employees Byron, Ginny, Jackie, and Brandy Holloway. Each of these bank employees told the Jensens if they followed their instructions, the Jensens' credit would be unharmed.

Plaintiffs are not attempting to modify their mortgage. After they filed this case, and after the bank stopped reporting the false delinquencies, the Jensens were able to refinance their mortgage with another lender. Rather, plaintiffs bring this action because the phone operator, Byron and Ginny all told Mr. Jensen that their credit would not be harmed whether they were approved or denied for the modification. Plaintiffs bring this action because Jackie told Mr. Jensen that making a $1792.65 payment would clear their credit. Plaintiffs bring this action because Brandy Holloway told Mr. Jensen that paying $1898.03 would stop the late reporting. Plaintiffs complied with the bank's inducements again and again, but the bank refused

7

to correct its reporting for almost two years, until after this case was filed.

II. PLAINTIFFS SUFFERED DAMAGES.

Under both the FCRA and RESPA claims, plaintiffs have established recoverable actual damages. The Jensens were denied a mortgage by OnPoint while the U.S. Bank account was being reported as delinquent. They were approved to refinance with a separate lender after the bank deleted the delinquencies. This is more than the evidence that was proffered by the plaintiff in *Dennis v. BEH-1, LLC*, 504 F.3d 892 (9th Cir. 2007). See also, *Miller v. Equifax Info. Servs., LLC*, 2012 U.S. Dist. LEXIS 168894 (D. Or. Nov. 28, 2012) ("Plaintiff's poor credit rating as reported by Equifax has already had adverse consequences in the recent past, and, as a matter of common sense, rational jurors might conclude it is likely to be harmful in the future unless changes, if warranted, are made to her credit report.").

The Jensens' emotional distress and related noneconomic damages continued after the bank "verified" the inaccurate information as accurate, and their disputes to the credit reporting agencies were rejected. A reasonable jury could conclude that having inaccurate information – any inaccurate information – following these disputes caused the Jensens distress, and their declarations support this.

Finally, the bank's insinuation that the Jensens did or would commit fraud is offensive and improper. Answering Br. at 46. The Jensens did no such thing. The Jensens were able to refinance their mortgage in 2012 (after the filing of this case) because the bank stopped reporting the false delinquencies, not because they committed fraud as the bank intimates.

It was the bank that induced the Jensens to apply for the modification based upon representations by three separate bank employees – the phone operator that took Mr. Jensen's application, as well as Byron and his supervisor Ginny. It was the bank that represented that the Jensens did not qualify for the permanent modification, even though the true cause was the bank's inability to correctly calculate Mr. Jensen's income.

It was bank employee Jackie who told Mr. Jensen a partial payment would qualify them for a "traditional option" modification and clear their credit. It was bank employee Tim who acknowledged that the Jensens' payments were misapplied and that he would forward the case to top management.

It was bank employee Brandy Holloway who told Mr. Jensen that an additional payment would stop the late reporting. It was bank employee Kelly Alvey who claimed the documents stated that the modification would affect the borrower's credit, when that was not added until much later.

It was the bank that sent wildly contradictory letters that varied from acknowledging the Jensens were current, to demanding $1,072.32, $4,149.97 and $1792 within a five week span, and as much as $7,013. The bank's spurious allegation that Mr. and Mrs. Jensen did or would commit fraud is not worthy of this Court.

## CONCLUSION

For the reasons set forth above, plaintiffs-appellants Dane and Jennifer Jensen ask the Court to reverse the Magistrate Judge and remand this case for trial.

DATED this 11th day of April, 2014.

> Respectfully submitted,
>
> s/ Justin M. Baxter
> Michael C. Baxter, OSB # 910203
> Justin M. Baxter, OSB # 992178
> Baxter & Baxter, LLP
> Attorneys for Plaintiffs-Appellants

10

**Form 6.**   **Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☒ this brief contains <u>2013</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    ☐ this brief uses a monospaced typeface and contains_____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* <u>Microsoft Word for Mac 2011</u> *(state font size and name of type style)* <u>Times New Roman 14</u> *, or*

    ☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)* _____ .

    Signature | s/ Justin M. Baxter

    Attorney for | Appellants

    Date | April 11, 2014

| 9th Circuit Case Number(s) | CASE NO.: 13-35703 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  April 11, 2014 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)  s/ Justin M. Baxter

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)